IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **MOMAR NDIR,** | : | CIVIL ACTION NO. 1:20-CV-705 |
| | : | |
| Petitioner | : | (Chief Judge Conner) |
| | : | |
| v. | : | |
| | : | |
| **CLAIR DOLL**, Warden, | : | |
| | : | |
| Respondent | : | |

### MEMORANDUM

Petitioner Momar Ndir is a civil detainee in the custody of the United States Department of Homeland Security, Immigration and Customs Enforcement ("ICE") at York County Prison. Ndir brings this habeas action pursuant to 28 U.S.C. § 2241 seeking immediate release from ICE custody based on his fear that he will contract the COVID-19 virus[1] if he remains detained. For the reasons that follow, we will deny Ndir's petition.

**I.      Factual Background & Procedural History**

Ndir is a 34-year-old citizen of the country of Senegal. (Doc. 1 ¶¶ 1, 12). On September 3, 2003, Ndir entered the United States on a "B-2" visitor visa. (See id. ¶ 1; Doc. 4-1 ¶ 21); see also 8 U.S.C. § 1101(a)(15)(B). Ndir adjusted to the status of lawful permanent resident on September 12, 2013. (See Doc. 1 ¶ 1).

---

[1] The COVID-19 virus is also known as "severe acute respiratory syndrome coronavirus 2" and "SARS-CoV-2." WORLD HEALTH ORGANIZATION, NAMING THE CORONAVIRUS DISEASE (COVID-19) AND THE VIRUS THAT CAUSES IT, https://www.who.int/emergencies/diseases/novel-coronavirus-2019/technical-guidance/naming-the-coronavirus-disease-(covid-2019)-and-the-virus-that-causes-it. We refer to the virus herein as "the COVID-19 virus" and to the disease it causes as "COVID-19."

According to Joseph Dunn, Assistant Field Office Director for Enforcement and Removal Operations in ICE's Philadelphia Field Office ("AFOD Dunn"), Ndir was arrested in North Carolina in October 2013—one month after his adjustment of status—for obtaining property by false pretenses. (Doc. 4-1 ¶ 21). Ndir was placed on probation for 12 months pursuant to a deferred prosecution agreement, and the charges were dismissed when Ndir's term of probation terminated in March 2015. (Id.) Two years later, in May 2017, Ndir was convicted in the United States District Court for the Eastern District of North Carolina for conspiracy to launder monetary instruments and aiding and abetting aggravated identity theft. (Id.) AFOD Dunn describes the offense conduct as follows:

> Ndir and numerous others were involved in an extensive scheme to possess, use, and traffic in stolen credit and debit card account numbers and counterfeit access devices. Ndir and others also conspired to launder the proceeds of the access device fraud by purchasing large quantities of cigarettes for resale. Additionally, the offense involved the purchase of stolen credit card numbers from various "dark websites," usually run by criminal organizations in Romania, the Ukraine, China, and elsewhere, and then re-encoding the account numbers onto bank or gift cards. The identifiable loss to the victims (10 or more) was $481,000.

(Id.) Ndir was sentenced to 42 months' imprisonment for both offenses. (Id.)

After serving his federal sentence, Ndir was placed in removal proceedings. (See id.) Ndir was charged as being removable under 8 U.S.C. § 1227(a)(2)(A)(iii) and, because of his status as an "aggravated felon," was subject to mandatory detention pending removal. (See id.) The immigration court sustained the charge of removability and ordered Ndir removed, and the Board of Immigration Appeals affirmed the removal order. (Id.) Ndir petitioned for review in the Third Circuit

2

Court of Appeals, which granted a temporary administrative stay of his removal while a motions panel considered whether his case met the criteria for a formal stay. (See id.); see also Ndir v. Att'y Gen. U.S., No. 19-3320 (3d Cir. Dec. 3, 2019). On March 17, 2020, the immigration court convened a bond hearing and found by clear and convincing evidence that Ndir remained a flight risk and a danger to the public, necessitating continued detention. (Doc. 4-1 ¶ 21). On March 31, 2020, the Third Circuit denied Ndir's motion for stay of removal and vacated the temporary administrative stay. (Id.); Ndir, No. 19-3320 (3d Cir. Mar. 31, 2020). AFOD Dunn advises that "[t]here is reason to believe that Ndir's removal would occur within the reasonably foreseeable future." (Doc. 4-1 ¶ 21).

Ndir is currently detained pending removal at York County Prison. (See Doc. 1 ¶ 2; Doc. 4-1 ¶ 21). He claims that the prison has failed to take appropriate action to protect detainees from the COVID-19 virus. (Id. ¶ 14). Ndir does not allege that he has a preexisting medical condition making him uniquely susceptible to contracting the virus or to experiencing severe complications from the disease it causes. (See generally Doc. 1). Instead, he expresses general concern about recent reports that some younger individuals with no comorbidities have experienced strokes after contracting the COVID-19 virus. (Doc. 1 ¶¶ 13, 25-28). Ndir alleges that he has developed anxiety and is experiencing insomnia because of his concerns. (See id. ¶ 44).

As to the conditions of confinement at York County Prison, Ndir alleges that detainees are denied protective masks, hand sanitizer, or antibacterial soap; that prison officials engage in unsanitary practices such as coughing and sneezing near

3

unprotected detainees; that the prison is not implementing isolation or quarantine procedures; that monitoring and testing are not sufficiently widespread; that cleaning and sanitizing are "irregular"; and that the very nature of a detention facility prohibits effective social distancing. (See id. ¶¶ 14, 35). Ndir notes that a fellow ICE detainee previously tested positive for the COVID-19 virus at York County Prison. (Id. ¶ 17). And he states his belief that immigration detainees are being overlooked in favor of criminal pretrial detainees and convicted prisoners as government officials review individual cases for possible release. (See id. ¶ 24).

Evidence submitted by respondent paints a different picture. AFOD Dunn notes that York County Prison has historically operated at or near its 2,245-person capacity but that it is currently operating at approximately half capacity, with only 1,180 individuals housed in the facility as of last week. (See Doc. 4-1 ¶ 7). All staff and vendors are now being screened for COVID-19 symptoms before entering the facility. (Id. ¶ 16). In-person social visitation has been suspended, and professional visitation is limited to noncontact visits. (Id. ¶ 18).

The prison has implemented thorough screening procedures for its inmates and detainees. New inmates and detainees are screened upon intake for COVID-19 symptoms and potential exposure to the virus, and the existing prison population is regularly monitored for symptoms via "roving temperature checks." (Id. ¶¶ 11, 12, 17, 23(a)). Anyone who is symptomatic is isolated and tested for the virus; anyone

4

who is asymptomatic but possibly exposed is placed in a "cohort"[2] for the duration of the virus's incubation period.  (Id. ¶¶ 12-13).  The prison has designated specific quarantine housing units for individuals with suspected or confirmed cases of COVID-19.  (Id. ¶ 20).

York County Prison has also taken steps to lessen the risk of transmission within the prison should an inmate, detainee, or staff member contract the virus. AFOD Dunn explains that all staff and personnel entering the facility are required to wear an N95 mask.  (Id. ¶ 23(a)).  Any individual in "isolation status" must wear an N95 mask when leaving the cohorted housing unit.  (Id.)  All other detainees and inmates are issued two surgical masks each and are required to wear a mask any time they are out of their cell, with individuals housed in "dormitory" style units being encouraged to wear masks even while sleeping.  (Id.)  Prison staff launder the surgical masks weekly.  (Id.)  Inmates and detainees are provided one bar of soap each, with exhausted bars being replaced immediately; high-contact and high-traffic areas are being cleaned "repeatedly" during the day; and prison officials are providing education to staff, inmates, and detainees on proper handwashing, hand hygiene, and covering coughs.  (Id. ¶ 15(a)).

---

[2] According to AFOD Dunn, "cohorting" is an "infection prevention strategy" that involves housing asymptomatic-but-potentially-ill detainees together during a virus's incubation period.  (Id. ¶ 13).  Cohorting lasts for the entire duration of the incubation period—14 days in the case of the COVID-19 virus.  (Id.)  When an individual in a cohort exhibits symptoms, they are referred to a medical provider for further evaluation.  (Id.)

To date, York County Prison has had only one confirmed case of the COVID-19 virus within the facility. (Id. ¶ 22(a)). Specifically, on April 3, 2020, a female ICE detainee tested positive for the virus. (Id.) That individual was quarantined and placed under medical observation before eventually being released from custody. (Id.) As of April 29, 2020, there are zero confirmed cases of the virus among ICE detainees at York County Prison. (Id.)

AFOD Dunn reports that ICE has implemented federal guidance for reassessing the continued detention of individuals "potentially being at higher risk" for serious complications from COVID-19. (Id. ¶ 25). Ndir's case was reviewed as part of this process, although there is no indication in our record that Ndir in fact qualifies as a higher-risk individual. (See id.) Reviewing officials determined that Ndir is not an appropriate candidate for release because he "constitutes a danger to persons or property and/or [a] serious risk[] of flight." (Id.)

On April 28, 2020, Ndir filed a counseled petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241, requesting immediate release from ICE custody.[3] We ordered expedited briefing, and Ndir's petition is now ripe for review.

---

[3] Ndir also indicates that he submitted a request for humanitarian parole to ICE in February 2020. (Doc. 1 ¶ 11). That request is unrelated to the pandemic; it was animated by Ndir's concerns about his wife's mental health due to the recent passing of her father and the decline in her mother's health. (Id. ¶¶ 37-41). To the extent Ndir asks the court to issue a writ of mandamus pursuant to 28 U.S.C. § 1361 concerning this request, we decline. Ndir's "argument" in this respect is entirely conclusory, lacks citation to relevant authority other than Section 1361 itself, (Doc. 1 ¶¶ 37-41; Doc. 6 at 19-20), and utterly fails to show that no adequate means exist to obtain the relief sought, that his right to the writ "is clear and indisputable," or that the writ is "appropriate" here. See Hollingsworth v. Perry, 558 U.S. 183, 190 (2010) (*per curiam*).

### A. Scope of the Habeas Remedy

We note as a threshold matter that respondent appears to have abandoned the argument, raised in previous cases, that conditions-of-confinement claims are not cognizable in habeas. (See generally Doc. 4). We have thoroughly explored this jurisdictional issue and held that, under Third Circuit precedent, a claim alleging conditions so "extreme" as to "mark a fundamental shift in the nature of [one's] confinement" can be raised in a habeas petition. See Camacho Lopez v. Lowe, No. 3:20-CV-563, 2020 WL 1689874, at *5-6 (M.D. Pa. Apr. 7, 2020) (citing Woodall, 432 F.3d at 236, 241-44; Ali v. Gibson, 572 F.2d 971, 975 n.8 (3d Cir. 1978), superseded by statute on other grounds as stated in Callwood v. Enos, 230 F.3d 627, 633 (3d Cir. 2000)). This rationale has become the prevailing rule in this judicial district.[4] Because Ndir is detained at York County Prison, where the COVID-19 virus has previously been detected in another civil immigration detainee, and because he alleges that staff are not acting to protect detainees from exposure, we conclude that we have habeas jurisdiction over the instant petition. Cf. Verma, 2020 WL 1814149, at *4.

---

[4] See, e.g., Thakker v. Doll, No. 1:20-CV-480, ___ F. Supp. 3d ___, 2020 WL 2025384, at *2 (M.D. Pa. Apr. 27, 2020) (Jones, J.), appeal filed, No. 20-1906 (3d Cir.); Bystron v. Hoover, No. 3:20-602, 2020 WL 1984123, at *3-4 (M.D. Pa. Apr. 27, 2020) (Mannion, J.); Engelund v. Doll, No. 4:20-CV-604, 2020 WL 1974389, at *7 (M.D. Pa. Apr. 24, 2020) (Brann, J.); Cuevas v. Pennsylvania, No. 1:19-CV-1733, 2020 WL 1911511, at *4 (M.D. Pa. Apr. 20, 2020) (Rambo, J.); Saillant v. Hoover, No. 1:20-CV-609, 2020 WL 1891854, at *3 (M.D. Pa. Apr. 16, 2020) (Wilson, J.); see also Umarbaev v. Lowe, No. 1:20-CV-413, 2020 WL 1814157, at *5 n.2 (M.D. Pa. Apr. 9, 2020) (Kane, J.) (assuming without deciding that claim was cognizable in habeas).

Respondent argues that, if we choose to exercise jurisdiction in this case, any remedy granted in habeas must be proportionate to the claim alleged. (See Doc. 4 at 11-13). That is, respondent contends that the "only appropriate remedy" for a conditions-of-confinement claim is "a cure of the violative conditions," not release from those conditions. (Id. at 11). We have previously indicated that this argument has plausible merit. Buleishvili, 2020 WL 1911507, at *4. We cited as an example the Third Circuit's decision in Woodall, where a petitioner's success on the merits of his non-"core" habeas claim did not mean that he received the ultimate habeas remedy sought—referral to a community corrections center. See id. (citing Woodall, 432 F.3d at 251). Rather, the court said that "the appropriate remedy is an order requiring the [Bureau of Prisons] to consider—in good faith—whether or not Woodall should be transferred to a [community corrections center]." Woodall, 432 F.3d at 251. Woodall suggests that something short of immediate release may be the proper remedy in similar non-"core" habeas cases. Because we conclude *infra* that Ndir cannot prevail on his constitutional claims, we need not reach the question of remedy today.

### B. Merits of Ndir's Habeas Petition

The gravamen of Ndir's petition is his claim that York County Prison is not implementing adequate measures to prevent the spread of the COVID-19 virus within the facility. Specifically, he avers that York County Prison is "disregard[ing] established safety standards," placing him at high risk of contracting the COVID-19 virus. (Doc. 1 at 2). We glean two claims, both sounding in due process, from Ndir's petition: a claim that York County Prison is subjecting him to punitive conditions of

9

confinement, and a claim that York County Prison is being deliberately indifferent to the risk posed by the COVID-19 virus.[5] (Id. ¶¶ 52-63).

As to the first claim, the law in the Third Circuit is clear that a civil immigration detainee is entitled to the "same due process protections" as a pretrial detainee. E.D. v. Sharkey, 928 F.3d 299, 306-07 (3d Cir. 2019) (citations omitted). An immigration detainee can bring a claim for violation of those protections when the conditions of confinement fall below constitutional minimums. Id. To prevail on such a claim, Ndir must show that current conditions of confinement at York County Prison "amount to punishment" lacking any reasonable relationship to "a legitimate governmental objective." Bell v. Wolfish, 441 U.S. 520, 535, 539 (1979). As to his second claim, Ndir must demonstrate that detaining officials knew or should

---

[5] Ndir styles his claims as arising under the Fifth and Eighth Amendments to the United States Constitution. (See Doc. 1 at 1-2; Doc. 1 ¶¶ 52-63). Because Ndir challenges the conditions of confinement in a county prison and alleges deliberate indifference by a county warden, his claims necessarily arise under the Fourteenth Amendment. Compare Ziglar v. Abbasi, 582 U.S. ___, 137 S. Ct. 1843, 1852-53, 1864 (2017) (applying Fifth Amendment to immigration detainees' due process challenge to conditions of confinement at federal detention center), Bell v. Wolfish, 441 U.S. 520, 523-24, 530-62 (1979) (applying Fifth Amendment to federal pretrial detainees' due process challenges to conditions of confinement at federal correctional center), and id. at 580 n.3 (1979) (Stevens, J., dissenting) ("Because this is a federal facility, it is, of course, the Fifth Amendment that applies."), with E.D. v. Sharkey, 928 F.3d 299, 303, 306-07 (3d Cir. 2019) (applying Fourteenth Amendment to immigration detainee's due process challenge to conditions of confinement at county detention center), and Fuentes v. Wagner, 206 F.3d 335, 338, 343-44 (3d Cir. 2000) (applying Fourteenth Amendment to federal pretrial detainee's challenge to conditions of confinement and treatment by staff at county prison). See also Hubbard v. Taylor, 399 F.3d 150, 158 n.13 (3d Cir. 2005) (explaining that "[t]he Fifth Amendment Due Process Clause was implicated in Bell because the plaintiffs were federal pre-trial detainees" (citing Fuentes, 206 F.3d at 344)). As many of these decisions reflect, the operative Fourteenth Amendment legal standards nonetheless derive from Fifth and Eighth Amendment jurisprudence and are largely identical, except as otherwise indicated herein.

have known of, and consciously disregarded, an excessive risk to his health and safety.  See Natale v. Camden Cty. Corr. Facility, 318 F.3d 575, 582 (3d Cir. 2003) (citation omitted); see also Woloszyn v. County of Lawrence, 396 F.3d 314, 320-21 (3d Cir. 2005) (citations omitted).

The judges of this district have by now reviewed the claims of dozens of civil ICE detainees challenging their continued confinement during the COVID-19 pandemic based on the same constitutional theories raised by Ndir.  The consensus among our court is that much more than a generalized fear of the COVID-19 virus is required to justify habeas relief on either claim.[6]  We must instead conduct an "individualized" assessment of the record, evaluating whether the conditions at the specific institution and the circumstances of the specific petitioner meet applicable constitutional standards.  See Buleishvili, 2020 WL 1911507, at *5 (citing Umarbaev v. Lowe, No. 1:20-CV-413, 2020 WL 1814157, at *7 (M.D. Pa. Apr. 9, 2020); Saillant v. Hoover, No. 1:20-CV-609, 2020 WL 1891854, at *4 (M.D. Pa. Apr. 16, 2020); Verma, 2020 WL 1814149, at *5).

In the context of the current global pandemic, relevant considerations bearing on both constitutional inquiries include, but are not limited to: (1) the petitioner's condition, and specifically whether the petitioner has tested positive for the COVID-19 virus or is exhibiting symptoms consistent with COVID-19, is known to have been directly exposed to the virus, or is at high risk of experiencing serious

---

[6] See generally Bystron, 2020 WL 1984123 (Mannion, J.); Engelund, 2020 WL 1974389 (Brann, J.); Cuevas, 2020 WL 1911511 (Rambo, J.); Buleishvili, 2020 WL 1911507 (Conner, C.J.); Saillant, 2020 WL 1891854 (Wilson, J.); Umarbaev, 2020 WL 1814157 (Kane, J.).

11

complications from COVID-19; (2) the detention space itself and the manner in which it impacts the risk of contracting the virus; and (3) the facility's efforts to prevent or mitigate detainee exposure to the virus.  Buleishvili, 2020 WL 1911507, at *5 (adopting test developed by Judge Wilson in Saillant, 2020 WL 1891854, at *4).  As to any claim that detention is unconstitutionally punitive, we must of course consider the initial basis and continued justification for the petitioner's detention.  See id.  And as to any deliberate-indifference claim, we must examine the response of prison staff to the petitioner's individual medical needs.  See id. at *5-6.  As these considerations reflect, a petitioner's age and medical condition are but two factors among many.  Increasingly—and we think correctly given the nature of these claims—judges are concentrating their analyses on the conditions of confinement and the conduct of the respondents.[7]

---

[7] See, e.g., Bystron, 2020 WL 1984123, at *5-6 (petition of detainee with hypertension denied because respondent had implemented adequate preventative measures throughout facility); Engelund, 2020 WL 1974389, at *2-4, *9-11 (petition of medically high-risk detainees denied where respondents, including respondent Doll, had implemented extensive protective measures in response to the COVID-19 pandemic); Buleishvili, 2020 WL 1911507, at *6 (petition of symptomatic detainee denied because facility staff had responded adequately to his medical needs and had implemented extensive protective measures); Umarbaev, 2020 WL 1814157, at *6-7 (petition of symptomatic detainee with hypertension denied on same basis); Verma, 2020 WL 1814149, at *5-6 (petition of detainee with preexisting conditions denied because, *inter alia*, respondent Doll had implemented extensive protective measures); see also Thakker, 2020 WL 2025384, at *1, *4-5, *8-11 (ordering several previously released detainees, all considered high risk, to return to ICE custody based in part on "drastic changes" at local detention facilities, including York County Prison); Camacho Lopez, 2020 WL 1689874, at *7-8 (finding that county detention center had not exhibited deliberate indifference toward detainee who contracted the COVID-19 virus in ICE custody and required hospitalization).

We conclude that habeas relief is not warranted here. Ndir is subject to mandatory detention pending removal due to his status as an "aggravated felon" convicted of serious federal crimes. See 8 U.S.C. § 1226(c)(1)(B). ICE officials recently reviewed Ndir's case and determined that detention remained necessary because Ndir "constitutes a danger to persons or property and/or [a] serious risk[] of flight." (Doc. 4-1 ¶ 25). While the disjunctive nature of this statement obscures exactly which reason officials relied on, either reason would independently qualify as a legitimate government interest in detention for purposes of our due process analysis. See Engelund, 2020 WL 1974389, at *9.

Nothing in the record suggests that Ndir is uniquely imperiled by remaining in confinement during the pandemic. Ndir is only 34 years old and he is not considered to be "high risk" by virtue of his age or otherwise. Cf. CENTERS FOR DISEASE CONTROL AND PREVENTION, GROUPS AT HIGHER RISK FOR SEVERE ILLNESS, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/groups-at-higher-risk.html (last reviewed Apr. 17, 2020). He does not claim to have tested positive for the virus, to have been directly exposed to it, or to be experiencing symptoms of the disease it causes. We acknowledge Ndir's concern based on reports of strokes among younger individuals who contract the virus, (see Doc. 1 ¶¶ 13, 25-28), but he submits no evidence from which we could even infer, much less find, that he is personally susceptible to this outcome.

Finally, Ndir's allegations concerning the lack of protective measures are squarely contradicted by the record evidence supplied by respondent, as well as recent findings of this court and others as to the efforts of York County Prison to

prevent the spread of the COVID-19 virus within its walls. See Thakker, 2020 WL 2025384, at *4-5; Engelund, 2020 WL 1974389, at *4-5, *13 n.179; Verma, 2020 WL 1814149, at *6. The prison has implemented extensive screening measures for inmates, detainees, staff, and vendors; it has provided surgical masks to inmates and detainees and requires staff to wear respirator masks; it has increased cleaning and sanitation protocols and is offering hygiene education; and it has measures in place to prevent an outbreak in the event any individual in the facility contracts the virus. It is a testament to the robustness of York County Prison's response that there have been no confirmed cases of the virus since the initial positive test result more than one month ago. See Thakker, 2020 WL 2025384, at *4-5.

Ndir makes much of the fact that York County Prison has not provided detainees with gloves, hand sanitizer, or routine testing for the COVID-19 virus. (See Doc. 1 ¶¶ 14, 34-35). Alcohol-based hand sanitizer has not been provided for a reason: it presents a security risk in the prison setting where Ndir is housed. (See Doc. 4-1 ¶ 15(a)). Moreover, guidance from the Centers for Disease Control and Prevention ("CDC") indicates that hand sanitizer is only necessary when "soap and water are not readily available," CENTERS FOR DISEASE CONTROL AND PREVENTION, HOW TO PROTECT YOURSELF & OTHERS, https://www.cdc.gov/coronavirus/2019-ncov/prevent-getting-sick/prevention.html (last visited May 7, 2020), and York County Prison provides ready access to both. Nor can we agree with Ndir that the unavailability of gloves and regular testing alone renders detention punitive, particularly given the other significant efforts of prison staff to protect detainee

health and safety. As respondent notes, these same resources are in scarce supply for the general public too. (See Doc. 4 at 13-14).

Ndir also suggests that his constitutional rights are being violated because a "cramped" prison environment makes social distancing "impossible." (Doc. 1 ¶¶ 14, 34-35). We recognize that the prison setting raises unique concerns regarding the spread of the COVID-19 virus since, by their very nature, prisons are confined spaces unsuited for social distancing. Verma, 2020 WL 1814149, at *4; see also Engelund, 2020 WL 1974389, at *9. But the inability to practice effective social distancing does not, in and of itself, render detention punitive. See Engelund, 2020 WL 1974389, at *9. The CDC acknowledges that individuals will be detained during the pandemic and has issued preparation, prevention, and management guidance for detention facilities. See CENTERS FOR DISEASE CONTROL AND PREVENTION, INTERIM GUIDANCE ON MANAGEMENT OF CORONAVIRUS DISEASE 2019 (COVID-19) IN CORRECTIONAL AND DETENTION FACILITIES, https://www.cdc.gov/coronavirus/2019-ncov/community/correction-detention/guidance-correctional-detention.html (last reviewed Apr. 18, 2020). York County Prison appears to be following that guidance to the best of its ability.

As we have said before, there is no perfect solution for preventing the spread of the COVID-19 virus within detention facilities. Verma, 2020 WL 1814149, at *6. But the present record establishes that York County Prison is responding adequately under these difficult circumstances. Ndir simply has not shown that he is being subjected to punitive conditions of confinement or that the prison is

deliberately disregarding the threat posed by the COVID-19 virus. We therefore conclude that Ndir is not entitled to habeas relief.

**IV.     Conclusion**

Ndir's petition (Doc. 1) for writ of habeas corpus will be denied. An appropriate order shall issue.

                                         /S/ CHRISTOPHER C. CONNER
                                        Christopher C. Conner, Chief Judge
                                        United States District Court
                                        Middle District of Pennsylvania

Dated:    May 8, 2020